UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. |
| | : | |
| | : | VIOLATION: |
| v. | : | |
| | : | 18 U.S.C. § 371 (Conspiracy |
| | : | to Commit Wire Fraud) |
| **KING EVERETT JOHNSON,** | : | |
| | : | FORFEITURE: |
| **Defendant.** | : | 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § |
| | : | 2461(c), 21 U.S.C. § 853(p) |

## INFORMATION

The United States Attorney charges:

### Relevant Entities and Individuals

1. The defendant, KING EVERETT JOHNSON ("JOHNSON"), was the founder of Integrated Business and Technology Solutions, LLC ("IBATS").

2. The Program Executive Office Enterprise Information Systems ("PEO EIS") was an organization within the United States Department of the Army ("Army"), which provided infrastructure and information management systems to the Army. The Project Manager, Defense Communications and Army Transmission Systems ("PM DCATS"), was a division of PEO EIS. The Product Management, Installation Information Infrastructure Modernization Program ("PM I3MP"), was another division of PEO EIS.

3. Public Official C was an Assistant Project Manager for PM DCATS. While employed at PM DCATS, Public Official C was a public official. Until in or about May 2010, Public Official C worked in Seoul, South Korea. From in or about May 2010 until Public Official C's resignation from PM DCATS in April 2012, Public Official C worked in Fort Belvoir, Virginia.

In or about June 2010, Public Official C was a Product Director for PMI3MP. Public Official C became a public official in or about July 1990.

4. While stationed in Seoul, South Korea, Public Official C was the Contracting Officer Technical Representative ("COTR") for a task on a prime contract with the Eighth United States Army, Command and Control C4IT Technical Support Services, prime contract number W15P7T-06-D-E407 (the "Prime Contract").

5. Unisource Enterprise Inc. ("UEI") provided information technology services to the United States Department of the Army through a subcontract under the Prime Contract. UEI maintained its corporate headquarters in Annandale, Virginia. From in or about October 2008 to in or about January 2009, JOHNSON was an employee of UEI stationed in Seoul, South Korea.

6. Nick Park, a/k/a Nochol Park ("PARK"), was the co-founder and President of UEI.

7. Company E was a government contractor with offices in Ashburn, Virginia. Beginning in or about January 2009, Company E provided information technology services to the United States Department of the Army through subcontracts under the Prime Contract. From in or about January 2009 to in or about October 2009, JOHNSON was an employee of Company E stationed in Seoul, South Korea.

8. From in or about October 2008 to in or about January 2009, JOHN HAN LEE ("LEE"), was an employee of UEI. In or about January 2009, LEE left UEI and joined Company E.

9. Oh Sung Kwon, a/k/a Thomas Kwon ("KWON"), was the co-founder and Chief Financial Officer of Avenciatech, Inc. ("Avenciatech"). Avenciatech maintained its corporate headquarters in Annandale, Virginia. Beginning in or about October 2009, Avenciatech provided

information technology services to the United States Department of the Army through subcontracts under the Prime Contract.

10. Company F was the prime contractor for the Prime Contract. Company F maintained offices in Eatontown, New Jersey.

### The False Billing Scheme with IBATS and Company E

11. In or about 1997, JOHNSON met Public Official C through a Department of the Army project. Over the ensuing years, Public Official C became a mentor to JOHNSON.

12. In or around 2008, Public Official C approached JOHNSON about a potential employment opportunity in Korea with UEI. After JOHNSON expressed interest in the opportunity, Public Official C introduced JOHNSON to LEE. JOHNSON met with PARK and LEE concerning the potential employment opportunity at UEI. In or about October 2008, JOHNSON moved to Seoul, South Korea to become UEI's new Program Manager on a subcontract through Company F and the Prime Contract. While UEI's Program Manager, Public Official C provided directions to JOHNSON concerning the local Korean companies that UEI should use as subcontractors. During UEI's tenure as a subcontractor, JOHNSON complained to Public Official C about UEI not paying employees, including JOHNSON. Thereafter, Public Official C began to seek a replacement for UEI on the subcontract.

13. In or around January 2009, LEE identified Company E to Public Official C as a potential replacement for UEI on the subcontract. In or around February 2009, at Public Official C's direction, Company E replaced UEI on the subcontract and JOHNSON became an employee of Company E. While an employee of Company E, Public Official C provided directions to JOHNSON concerning the local Korean companies that Company E should use as subcontractors.

14. In or around March 2009, JOHNSON discussed with Public Official C that UEI owed money to JOHNSON and KWON. Public Official C and JOHNSON agreed to use the subcontract awarded to Company E to pay the monies owed by UEI to JOHNSON and KWON. JOHNSON and Public Official C agreed that IBATS would invoice Company E for the monies owed to JOHNSON and KWON. JOHNSON and Public Official C knew that IBATS had provided no services to Company E.

15. Between on or about March 27, 2009, and on or about June 30, 2009, at the direction of Public Official C, JOHNSON submitted four invoices from IBATS to Company E via e-mail. Each invoice was addressed to JOHNSON's attention at Company E. The total amount of the invoices was $124,163.30. JOHNSON knew that the invoices were false because IBATS had not provided any services to Company E.

16. JOHNSON caused Company E to include the amounts invoiced by IBATS to Company E in the invoices submitted by Company E to Company F for payment under the Prime Contract. As a result, JOHNSON also caused Company F to submit the amounts invoiced by Company E to the Department of the Army for payment under the Prime Contract, including the amounts falsely billed by IBATS to Company E.

17. Between on or about June 9, 2009 and on or about December 23, 2009, Company E issued payments to IBATS totaling $124,163.30.

18. At Public Official C's direction, JOHNSON sent $40,000 from the proceeds of the IBATS invoices for KWON's intended benefit via wire transfers to one of KWON's associates.

19. JOHNSON kept the remainder of proceeds from the IBATS invoices for JOHNSON's benefit to pay JOHNSON for the amounts owed to JOHNSON by UEI and for personal expenses.

## COUNT I
## (Conspiracy to Commit Wire Fraud)

### THE CONSPIRACY

20. Paragraphs 1 through 19 of this Information are realleged and incorporated by reference as if set out in full.

21. From in or about March 2009 until in or about December 2009, in a continuing course of conduct, JOHNSON, Public Official C, and others did unlawfully, willfully, and knowingly combine, conspire, confederate, and agree together and with each other to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communication in interstate commerce, writings, signs, and signals for the purpose of executing such scheme and artifice, that is, knowingly submitted false and fraudulent invoices from IBATS to the Department of the Army through Company E and Company F, in violation of Title 18, United States Code, Section 1343.

### A GOAL OF THE CONSPIRACY

22. A goal of the conspiracy was for the co-conspirators, including JOHNSON, to unlawfully enrich themselves by submitting false and fraudulent invoices from IBATS to the Department of the Army through Company E and Company F.

### THE MANNER AND MEANS OF THE CONSPIRACY

23. To achieve the goal of the conspiracy, JOHNSON, Public Official C, and others used the following manners and means, among others:

a. Public Official C directed JOHNSON to prepare and submit false invoices from IBATS to Company E for services purportedly rendered by IBATS to Company E;

b. JOHNSON prepared false invoices stating that IBATS had provided services and incurred expenses and then submitted those documents to the Department of the Army, through Company E and Company F; and

c. JOHNSON received the proceeds from the false invoices, transferred $40,000 to KWON, and retained the remainder for his own personal benefit.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

12. In furtherance of the above-described conspiracy, and in order to carry out the goal thereof, JOHNSON, Public Official C, and others committed the following overt act, among others:

a. On or about March 27, 2009, at Public Official C's direction, JOHNSON submitted a false invoice from IBATS to Company E via e-mail for $51,659.90, knowing that IBATS had provided no services and incurred no expenses.

**(Conspiracy to Commit Wire Fraud, in Violation of Title 18, United States Code, Section 371)**

## FORFEITURE ALLEGATION

1. Upon conviction of the offense alleged in Count One, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States will seek a forfeiture money judgment against the defendant in the amount of $124,163.30.

2. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United Sates Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

RONALD C. MACHEN, Jr.
United States Attorney
For the District of Columbia

By: _____
MICHAEL K. ATKINSON
D.C. Bar No. 430517
JAMES E. SMITH
D.C. Bar No. 482985
ANTHONY SALER
Assistant United States Attorneys
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C. 20530
202.252.7817 (Atkinson)
202.252.6976 (Smith)
Michael.Atkinson2@usdoj.gov
James.Smith9@usdoj.gov

DATED: March 14, 2013